# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THEODORE WESBY, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-501 (RC) |
| | : | | |
| v. | : | Re Document No.: | 114 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DEFERRING RULING IN PART ON DEFENDANTS' MOTION FOR ENTRY OF AN ORDER OF RESTITUTION; DENYING DEFENDANTS' MOTION FOR ENTRY OF AN ORDER FOR PAYMENT OF COURT-ORDERED COSTS**

## I. INTRODUCTION

This case comes to this Court on remand from the U.S. Supreme Court, which reversed the entry of partial summary judgment to Plaintiffs against Defendants the District of Columbia and Metropolitan Police Department officers. Having satisfied the judgment by paying $680,000 to Plaintiffs after the D.C. Circuit affirmed the district court, Defendants now seek repayment of those funds as well as payment by Plaintiffs of Defendants' court-ordered Supreme Court litigation costs. For the reasons explained below, the Court grants in part and defers ruling in part on Defendants' motion for restitution. The Court orders restitution by The Law Offices of Gregory Lattimer, LLC ("Lattimer Law"), the law firm of Plaintiffs' then-counsel Gregory Lattimer, for the portion of the payment allocated to Lattimer Law as part of its contingency fee agreement with Plaintiffs. The Court defers ruling on the motion for an order of restitution by Plaintiffs of the remainder of Defendants' payment, and directs Plaintiffs, Lattimer, and Defendants to mediation on the issue. And because Defendants have not established that any

further action by this Court is necessary on the issue, the Court denies the motion for entry of an order for payment of Defendants' Supreme Court litigation costs.

## II. FACTUAL BACKGROUND

The Court presumes familiarity with the prior opinions related to this case, both at the district court level and on appeal, and confines its discussion to the facts most relevant to the present motion. *See Wesby v. District of Columbia* ("*Wesby I*"), 841 F. Supp. 2d 20 (D.D.C. 2012); *Wesby v. District of Columbia* ("*Wesby II*"), 765 F.3d 13 (D.C. Cir. 2014); *District of Columbia v. Wesby* ("*Wesby III*"), 138 S. Ct. 577 (2018). Plaintiffs are sixteen partygoers who brought suit against the District of Columbia (the "District") and five officers of the District's Metropolitan Police Department (together with the District, "Defendants") after they were arrested at a house party. *See Wesby III*, 138 S. Ct. at 584. Plaintiffs brought claims for false arrest under 42 U.S.C. § 1983, and for false arrest and negligent supervision by the District under D.C. law. *See id.* At the summary judgment stage, the district court found that the officers had lacked probable cause to arrest Plaintiffs. *See Wesby I*, 841 F. Supp. 2d at 35. The court entered summary judgment for Plaintiffs on some of their § 1983 and state law false arrest claims, as well as on Plaintiffs' negligent supervision claim against the District. *See id* at 48–49. After a damages-only trial, the jury awarded Plaintiffs $680,000 in compensatory damages and the district court entered judgment for Plaintiffs in the same amount. *See* Verdict Form 1–2, ECF No. 73; Judgment 1 (Nov. 9, 2012), ECF No. 75.

On appeal, the D.C. Circuit affirmed. *Wesby II*, 765 F.3d at 31. The Circuit concluded, *inter alia*, that there was no probable cause to arrest Plaintiffs. *See id.* at 19. Defendants were subsequently unsuccessful in both their petition for rehearing en banc, *see Wesby v. District of Columbia*, 816 F.3d 96, 96 (D.C. Cir. 2016), and motion for a stay of the mandate to seek

certiorari, *see* Order at 1, ECF No. 97. On May 19, 2016, Defendants satisfied the judgment by submitting payment of $685,003.27 to Lattimer Law. *See* Satisfaction of J. 1, ECF No. 107; Check from the District to Lattimer Law, Lattimer Resp. Pls.' Opp'n Mot. Restitution Ex. 4, ECF No. 143-4. Forty percent of the judgment, or $272,000, was set off as Lattimer Law's legal fees, and $408,000 was distributed to Plaintiffs according to their recovery at trial—where some plaintiffs were awarded $35,000 and some $50,000, yielding distributions after attorney's fees of $21,000 and $30,000, respectively. *See* Pls.' Distribution Statements, Decl. of Aderson Francois Ex. C, ECF. No. 137-4. The remaining $5,003.27 constituted post-judgment interest for the period between November 9, 2012, and Defendants' payment of the judgment on May 19, 2016. *See* Lattimer Resp. 12 n.2.[1]

---

[1] The Court notes that the distribution statements prepared by Lattimer Law are not a model of clarity. As discussed in Plaintiffs' opposition and Lattimer's response, the distribution statements reflect that Lattimer Law appears to have paid off debts owed by some of the Plaintiffs before distributing to them what was left from their share of the judgment. *See, e.g.*, Pls.' Distribution Statements 18 (noting payment of a lien held by Excel Legal Funding prior to distribution of remainder of judgment to plaintiff Shanjah Hunt); *see also* Pls.' Opp'n Mot. Restitution 4 n.2, ECF No. 137; Lattimer Resp. 5. While Lattimer is correct that there is nothing inherently wrong with this practice (as long as the plaintiffs consented to it), one distribution statement reflects that, as a result of owing over $38,000 in liens to third parties while receiving only $21,000 from the judgment, one of the plaintiffs was left with a "balance" of -$17,000 after the distribution. Pls.' Distribution Statements 33. The distribution statement could be interpreted to mean that Lattimer Law was only able to pay part of the plaintiff's $38,000 third-party debt with the proceeds of the judgment, and that the plaintiff was left with $17,000 in third-party debt still owing after the judgment. But one natural interpretation of the statement would be that the plaintiff was left owing money to Lattimer Law *itself* after the distribution, which may explain Plaintiffs' confusion regarding whether Lattimer retained some of the proceeds of the judgment to pay debts owed to himself. *See* Pls.' Opp'n 4 n.2.

More problematic is the fact that the distribution statements do not indicate whether the post-judgment interest was distributed, and to whom. The statements reflect the allocation and distribution of the $680,000 judgment, 40% to Lattimer Law and 60% to Plaintiffs, but not of the remaining $5,003.27 paid by the District. *See generally* Pls.' Distribution Statements. The Court can only hope that these funds were also distributed according to Plaintiffs' respective allocations, and not kept wholesale by Lattimer Law.

The Supreme Court granted certiorari, and ultimately issued an opinion reversing the Circuit and the district court. *Wesby III*, 138 S. Ct. at 588. The Supreme Court departed from the lower courts in finding that the arresting officers had probable cause to arrest Plaintiffs and, in any event, were entitled to qualified immunity. *See Wesby III*, 138 S. Ct. at 589–90. It accordingly reversed and remanded the case for entry of summary judgment to Defendants, *see Wesby*, 138 S. Ct. at 593, awarding Defendants $5,197 in costs for their appeal, *see* Judgment 3, *Wesby v. District of Columbia*, No. 12-7127 (D.C. Cir. Feb. 23, 2018), ECF No. 1719300.

On March 30, 2018, Defendants moved this Court to order restitution from Plaintiffs and Lattimer of the payment made in satisfaction of the now-reversed November 9, 2012 judgment, plus post-judgment interest, as well as to order Plaintiffs to pay the $5,197 in costs ordered by the Supreme Court. *See* Defs.' Mot. Restitution, ECF No. 114. After determining that the motion created a conflict between him and Plaintiffs, Lattimer withdrew as Plaintiffs' counsel. *See* Lattimer Mot. Withdraw, ECF No. 122; Min. Entry (Nov. 15, 2018). Lattimer then filed his opposition to the motion for restitution on November 16, 2018, *see* Lattimer Opp'n Mot. Restitution, ECF No. 130, with Defendants filing their reply on November 28, 2018, *see* Defs.' Reply Sup. Mot. Restitution ("Defs.' First Reply"), ECF No. 131. Represented by new, court-appointed counsel, Plaintiffs filed their opposition to the motion on April 9, 2019. *See* Pls.' Opp'n Mot. Restitution, ECF No. 137. Antoinette Colbert, the representative for the estate of one of the deceased plaintiffs, filed her own opposition the same day. Colbert Opp'n Mot. Restitution, ECF No. 139. Because Plaintiffs' arguments rested in significant part on accusations of malpractice by their former counsel, Lattimer filed a response to Plaintiffs' opposition on April 30, 2019, *see* Lattimer Resp., and Plaintiffs filed a surreply on May 2, 2019, *see* Surreply, ECF No. 147. Finally, Defendants filed their reply to Plaintiffs' opposition on May 7, 2019. *See*

4

Defs.' Reply Pls.' Opp'n Mot. Restitution ("Defs.' Second Reply"), ECF No. 145. Defendants' motion is now ripe for decision.

### III. ANALYSIS

Defendants have moved for restitution of the $685,003.27 payment made to Lattimer Law in satisfaction of the 2012 judgment, an award of post-judgment interest accruing from May 19, 2016, as well as for this Court to order payment by Plaintiffs of Defendants' court-ordered Supreme Court litigation costs.[2] As an initial matter, the Court denies the motion with respect to Defendants' Supreme Court litigation costs. The Supreme Court has already issued an order mandating that Plaintiffs pay the $5,197 in costs, and Defendants do not explain why a further order from this Court is necessary for that order to be enforceable.[3] In addition, the Court defers ruling on the motion as to any restitution owed, and by whom, on the share of the judgment distributed to Plaintiffs. Having taken into consideration the arguments of Defendants, Plaintiffs, and Lattimer as to the equities of restitution in the rather unique circumstances of this case, the Court refers the parties to mediation for a potential resolution of the issue.

With these preliminary matters addressed, the Court now considers whether Defendants are entitled to restitution from Lattimer Law—and Lattimer himself—on the share of the judgment Lattimer Law retained as attorney's fees. Defendants argue that they are entitled to restitution of the judgment because "[t]he right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established." Defs.' Mem. Supp. Mot. Restitution 4

---

[2] Defendants' motion repeatedly references the figure of $680,000. *See, e.g.*, Defs.' Mem. Supp. Mot. Restitution 4 ("The check was issued . . . in the full amount of $680,000."), ECF No. 114. But because Defendants make clear throughout the motion that they are seeking restitution of the full amount they paid Lattimer Law on May 19, 2016, the Court treats the motion for an order of restitution as seeking restitution of that full amount.

[3] Defendants are free to make a renewed motion on the issue that lays out any arguments for why this Court must issue a further order to render the Supreme Court judgment enforceable.

(quoting *Baltimore & Ohio R.R. Co. v. United States*, 279 U.S. 781, 786 (1929)), ECF No. 114. Pointing out that restitution is an equitable remedy left to the Court's discretion, Lattimer makes two arguments for why restitution is unavailable, which the Court addresses in turn. *See* Lattimer Opp'n 5–11. The Court first reviews Lattimer's argument that restitution is improper because the negligent supervision judgment against Defendants was not reversed by the Supreme Court. Next, the Court reviews whether Defendants' failure to post a bond and agreement to pay the judgment after they lost on appeal in exchange for Plaintiffs withdrawing their request for a writ of attachment bars restitution. Finding neither of these arguments persuasive, the Court finally addresses whether restitution by Lattimer Law and Lattimer himself is warranted here. On the basis of the arguments and record before it, the Court concludes that only restitution from Lattimer Law would be adequate to prevent unjust enrichment. The Court accordingly grants in part the motion for restitution, and orders restitution by Lattimer Law of the attorney's fees portion of Defendants' payment in satisfaction of the 2012 judgment, plus post-judgment interest accruing from May 19, 2016.

### A. The Supreme Court Resolved Plaintiffs' Negligent Supervision Claim

Before reaching Defendants' right to recover under restitution, the Court must address Lattimer's argument that Defendants have not "ultimately and completely prevailed on the merits." Lattimer Opp'n 4. Lattimer contends that the Supreme Court's decision "did not address [P]laintiffs' separate and distinct claim of negligent supervision," Lattimer Opp'n 3–4, and that because this "tort claim for damages directly against the District . . . has not been disturbed," *id.* at 4, payment in satisfaction of the general jury verdict should also remain undisturbed. *See id.* at 3–5. Defendants retort that "[t]here is no question that Defendants prevailed entirely and completely on all claims." Defs.' First Reply at 2. The Court agrees.

6

First, the Supreme Court's decision in *Wesby III* unambiguously indicates that the Court intended to reach all of Plaintiffs' claims, and that Defendants ultimately and completely prevailed on the merits. The Supreme Court expressly stated that "the District and its officers are entitled to summary judgment on all of the partygoers' claims." *Wesby III*, 138 S. Ct. at 589; *see also id.* at 589 n.6 ("The partygoers do not contest that the presence of probable cause defeats all of their claims."). And the Supreme Court noted that the negligent supervision claim was predicated on a finding that the officers lacked probable cause to arrest Plaintiffs, *see Wesby III*, 138 S. Ct. at 584 ("The partygoers' claims were all 'predicated upon the allegation that [they] were arrested without probable cause.'" (quoting *Wesby I*, 841 F. Supp. 2d at 32)), a finding that the Court expressly rejected.[4]

The District Court's summary judgment decision similarly made clear that Plaintiffs' success on their negligent supervision claim was premised on the lack of probable cause. The court explained that Plaintiffs were entitled to summary judgment on the negligent supervision claim "because the unlawful arrests were ordered by high level officials who knew or should have known that *probable cause was lacking* for these arrests." *Wesby I*, 841 F. Supp. 2d at 48 (emphasis added). And the Court of Appeals also understood the negligent supervision judgment to be based on "one of the District's supervisory officials['] direct[ion to] his subordinates to make an arrest that he should have known was *unsupported by probable cause*." *Wesby II*, 765 F.3d at 31 (emphasis added).[5]

---

[4] Lattimer contends that the Supreme Court's finding regarding probable cause was dicta. *See* Lattimer Opp'n 5 n.2. A cursory reading of *Wesby III* demonstrates that this argument is baseless. *See Wesby III*, 138 S. Ct. at 589 ("For all of these reasons, we reverse the D.C. Circuit's holding that the officers lacked probable cause to arrest. Accordingly, the District and its officers are entitled to summary judgment on all of the partygoers' claims.").

[5] Lattimer points to *District of Columbia v. Tulin*, 994 A.2d 788 (D.C. 2010), for the proposition that "negligent supervision is a tort claim . . . not dependent upon whether or not a

7

With the negligent supervision judgment entirely predicated on a lack of probable cause, and the Supreme Court finding that Plaintiffs' arrests were supported by probable cause, it is clear that the Court addressed and resolved Plaintiffs' negligent supervision claim in favor of Defendants. *See Wesby III*, 138 S. Ct. at 589 (determining that "the officers had probable cause"). Having prevailed on appeal and obtained reversal of the lower court's judgment in its entirety, Defendants are entitled to ask this Court to order restitution.

### B. Defendants' Failure to Post Bond or Entry of a Satisfaction of Judgment Does Not Prejudice Their Entitlement to Restitution

Next, Lattimer argues that restitution is inappropriate because Defendants did not attempt to post a bond for the judgment, and instead offered to pay the judgment to save future interest and in exchange for Plaintiffs not pursuing a writ of attachment. *See* Lattimer Opp'n at 5–6, 8–10. Lattimer further contends that Defendants' entry of a satisfaction of judgment formed a contract and that Defendants intended the payment to be final. *See id.* at 9–10 (citing Restatement (First) of Restitution § 74 (1937)). In response, Defendants contend that neither opting not to post a bond nor satisfying the judgment ceded their right to recover the payment if they succeeded on appeal. *See* Defs.' First Reply 2–3. Again, the Court agrees.

---

finding of tortious conduct on the part of the supervised officers occurred." Lattimer Opp'n 4. But *Tulin* involved a motorist's unlawful arrest by an officer who, the jury had found, believed in good faith that her conduct was lawful. *See* 994 A.2d at 799–800. Even if the officer herself was not liable, the plaintiff could still prevail against the officer's supervisors because the plaintiff had been unlawfully arrested as a result of their inadequate supervision. *See id.* And the district court in this case granted summary judgment to Plaintiffs under the same rationale. *See Wesby I*, 841 F. Supp. 2d at 48 (noting that the "high level officials . . . knew or should have known that probable cause was lacking"); *see also* Compl. ¶ 42, ECF No. 1 ("As a direct and proximate result of the acts and omissions of defendant District of Columbia, plaintiffs were wrongfully and unlawfully arrested, imprisoned and detained."). With the Supreme Court finding that Plaintiffs were in fact *lawfully* arrested, *Tulin* is inapposite and there is no longer a basis for Plaintiffs' claim.

First, Defendants' failure to post a bond does not extinguish their right to restitution. If judgment is entered against a party, that party "retains the right to appeal even if the judgment is executed" without posting a bond. *Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006); *see* Restatement (Third) of Restitution and Unjust Enrichment ("Restatement") § 18 cmt. c, illus. 1 (2011) ("Trial court renders a judgment in favor of A against B. B elects to satisfy the judgment, although it would have been possible to suspend execution pending appeal by posting a bond. Appellate court reverses the judgment. B is entitled to restitution from A."). Upon reversal of the judgment, a district court may order the party that initially prevailed to return any payments made in satisfaction of the judgment. *See Strong*, 443 F.3d at 1299 (citing *Baltimore & Ohio R.R. Co.*, 279 U.S. at 786). It follows that Defendants' entitlement to restitution is not prejudiced by Defendants' decision to not post a bond while seeking appellate relief.

For essentially the same reason, Defendants' satisfaction of the judgment in exchange for Plaintiffs withdrawing their request for a writ of attachment does not preclude their right to restitution. "By executing on their judgment and receiving . . . funds during the pendency of the appeal, [Plaintiffs] assumed the risk that they might have to repay the money if [Defendants] prevailed on appeal." *Strong*, 443 F.3d at 1300 (citing *Atl. Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309 (1935) and *Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996)). Defendants' submission of payment to Lattimer Law that simply satisfied the lower court's judgment is not a "settlement" that would bar Defendants from pursuing restitution once the judgment is overturned. It is true that, as Lattimer appears to allude to, restitution may be unavailable when "parties contract that payment is to be final." Restatement (First) of Restitution § 74; *see* Lattimer Opp'n 9–10; Restatement § 18, cmt. c ("[A] payment by way of compromise and settlement, where the purpose of the agreement is to effect a final resolution between the parties

irrespective of the validity or correctness of any prior decrees, is not subject to recovery in restitution . . . ."). However, there is nothing in the record to support Lattimer's assertion that Defendants entered into such an agreement with Plaintiffs. Accordingly, the Court rejects Lattimer's argument that Defendants are precluded from seeking restitution and proceeds to consider Defendants' right to recovery from Lattimer Law and Lattimer himself.

### C. Defendants are Entitled to Restitution from Lattimer Law

Finally, the Court addresses the core issue in Defendants' motion, whether equity considerations support restitution to Defendants of the payment made in satisfaction of the November 9, 2012 judgment. Defendants argue that they have been entirely vindicated on appeal, and accordingly that "Lattimer is . . . obligated to return any judgment monies he personally retained" as part of a contingency fee, Defs.' Mem. Supp. 6, in order to avoid unjust enrichment. *See* Defs.' Mem. Supp. 5–6. In response, Lattimer appears to contend that there was no contingency fee agreement with Plaintiffs, and as a result that restitution cannot be obtained for the attorney's fees paid by Plaintiffs to Lattimer Law. *See* Lattimer Opp'n 9 (citing *Mohamed*, 91 F.3d at 1126 ("[W]here a judgment creditor pays h[is] attorney for legal services rendered from the judgment proceeds, the attorney is under no duty to repay the money if the judgment is subsequently reversed.")). And Lattimer also argues that to the extent any restitution can be obtained, it should be from Lattimer Law rather than from himself. The Court first finds that Plaintiffs entered into a contingency agreement with Lattimer Law. Next, it finds that while equity requires restitution from Lattimer Law of the share of the $680,000 payment paid as a contingency fee, Defendants have not sufficiently established that Lattimer himself should be required to pay restitution.

10

It is well established that courts have the inherent authority to order restitution when a prior judgment has been set aside, unless restitution would be inequitable. *See United States v. Morgan*, 307 U.S. 183, 197–98 (1939); *Baltimore & Ohio R.R. Co.*, 279 U.S. at 786. To succeed on a restitution claim, the claimant "must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Atl. Coast Line R.R.*, 295 U.S. at 310 (citations omitted). "This power is a matter of equity rather than a matter of right." *In re Deepwater Horizon*, 845 F.3d 634, 638 (5th Cir. 2017) (citing *Atl. Coast Line R.R.*, 295 U.S. at 310, and *Mohamed*, 91 F.3d at 1126).

When facing the question of whether a party is entitled to restitution pursuant to a judgment that was subsequently reversed on appeal, courts have turned to the Restatement of Restitution and Unjust Enrichment to guide their determinations. *See, e.g.*, *id.*; *Mohamed*, 91 F.3d at 1126. The Restatement provides that "[a] transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment." Restatement § 18. The Restatement also provides that a claimant is entitled to interest accrued from the date of payment. *See* Restatement § 18, cmt. h (citing *id.* § 53 ("A person who is liable to make restitution of property or its value is liable for supplemental enrichment in the form of interest . . . .")).

The Restatement adopts the stance that attorneys who receive attorney's fees from the proceeds of a judgment as bona fide payees of their then-prevailing clients are not liable for restitution. *See id.* § 18, cmt. g. However, the Restatement indicates that attorneys *are* liable in restitution for fees received under contingency fee arrangements, because they wager the likelihood of nonrecovery, which makes the attorney a "real party in interest." *See id.* ("[A]

lawyer who receives a share of a judgment pursuant to a contingent-fee arrangement does not take the money as a bona fide payee . . . . [I]n such circumstances, the lawyer assumes the risk of nonrecovery: this makes the lawyer, not the client's creditor, but an assignee *pro tanto* of the client's judgment."); *see also Mohamed*, 91 F.3d at 1127 (finding that lawyer who received contingency fee "was a beneficiary of the trial court's error" and "under a duty to restore the amount received" upon reversal of judgment); *Ehsani v. McCullough Family P'ship*, 159 P.3d 407, 413 (Wash. 2007) ("That an attorney who is not a party to the action but is a real party in interest [rather than a bona fide payee] can be required to make restitution is confirmed by case law from a number of other jurisdictions."); *Cox v. Cox*, 780 N.E.2d 951, 962 (Mass. App. Ct. 2002) (agreeing that attorneys who are "real parties in interest" are "liable in restitution"). The Fifth Circuit has explained that:

> By conditioning his or her fees on success in litigation, the attorney assumes the risk of non-recovery. Because the initial judgment creditor ultimately collects nothing after the judgment is reversed, the attorney is also entitled to nothing pursuant to the terms of the fee agreement and is therefore liable to repay the funds in restitution. Many authorities have therefore likened an attorney with a contingency fee agreement to a real party in interest or assignee *pro tanto* of the client's judgment and thus view the attorney as standing in the client's shoes.

*In re Deepwater Horizon*, 845 F.3d at 639 (citations omitted).

Here, Lattimer appears to argue that no restitution can be ordered because there was no contingency agreement between Plaintiffs and Lattimer Law. *See* Lattimer Opp'n 9 ("[T]he defendants have no basis for asserting that the undersigned received compensation based upon a contingency agreement or any other agreement . . . ."). However, the retainer agreements signed by Plaintiffs, together with the distribution statements Plaintiffs received when the proceeds of the judgment were distributed, make abundantly clear that Lattimer Law was paid through a contingency fee agreement. *See generally* Pls.' Distribution Statements (allocating, for each plaintiff, 35% of the judgment as attorney's fees for trial work and 5% for appellate work); Pls.'

12

Retainer Agreements, Francois Decl. Ex. J, ECF No. 137-11 (noting, for each plaintiff, an agreement "to pay said attorneys, as a fee for professional services a sum equal to thirty-five(35) [sic] percent of any amount(s) received by me in said case(s)"). Restitution can therefore be ordered for the attorney's fees portion of Defendants' payment in satisfaction of judgment.

Having found that restitution is available for the attorney's fees portion of the payment, the Court must now determine whether it would be equitable here, and from who. As an initial matter, the Court takes guidance from the Restatement and concludes that it would offend notions of equity and good conscience to allow Plaintiffs' attorney to retain a contingency fee on a judgment that was subsequently reversed on appeal. *See Atlantic Coast Line R.R. Co.*, 295 U.S. at 309; Restatement § 18. The Court sees no reason not to order restitution to correct this unjust enrichment. *See Morgan*, 307 U.S. at 197 ("What has been given or paid under the compulsion of a judgment the court will restore when its judgment has been set aside and justice requires restitution.") (citation omitted). Accordingly, the Court finds that Lattimer Law must repay the portion of Defendants' payment, or $272,000, allocated to it as attorney's fees. Lattimer Law must also pay interest on that amount, starting from the date of the payment on May 19, 2019. *See* Restatement § 18, cmt. h. And because Lattimer Law's accounting has left unclear how Defendants' payment of $5,003.27 in post-judgment interest was distributed, the Court will also order the firm to promptly provide additional information regarding that portion of Defendants' payment.

The more contentious issue is whether Lattimer himself should be required to pay restitution. In their motion, Defendants do not attempt to differentiate between Lattimer and Lattimer Law. *See generally* Defs.' Mem. Supp. In both his opposition to the motion and his response to Plaintiffs' opposition, Lattimer points out that Lattimer Law is a separate, distinct

13

legal entity from himself, a limited liability company organized under D.C. law that shields its members from personal liability on any liability of the company. *See* Lattimer Opp'n 8; Lattimer Resp. 11–12 (citing D.C. Code § 29-803.04). As Lattimer notes in his response to Plaintiffs' motion, all parties involved only transacted with Lattimer Law: Plaintiffs signed retainers with Lattimer Law; Defendants made their payment in satisfaction of judgment to Lattimer Law, and Lattimer Law distributed the proceeds of the judgment to Plaintiffs. *See* Lattimer Resp. 12; Pls.' Distribution Statements; Pls.' Retainer Agreements; Check from the District to Lattimer Law.

In their reply to Plaintiffs' opposition, Defendants belatedly make the argument that Lattimer should nonetheless be held personally liable for restitution under the doctrine of veil piercing. Under D.C. law, in order to pierce the corporate veil and impose personal liability upon a corporation's shareholders, the moving party must provide "proof that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it."[6] Defs.' Second Reply 8 (quoting *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008)); *see also Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 92 (D.C. 1994) (noting that courts are to consider such factors as, *inter alia*, whether corporate funds and assets have been intermingled with personal assets and whether the corporation is used fraudulently to protect personal business of the shareholders). Here, Defendants argue that "there is absolute unity of ownership and interest" between Lattimer and Lattimer Law, and that because Lattimer was the attorney of record throughout the litigation, "[i]t cannot be doubted that Mr. Lattimer *is* [Lattimer Law]." Defs.' Second Reply 9. Defendants further represent that "the Court should not permit Mr.

---

[6] Lattimer represents in his briefs that Lattimer Law is a limited liability company organized under D.C. law. *See* Lattimer Opp'n 8.

Lattimer to avoid disgorging an unearned fee—or the entire judgment—by hiding behind a shell corporate entity that may have few or no assets." *Id.*

The Court is unconvinced. As an initial matter, "[c]ourts seldom consider new arguments first raised in reply briefs." *Slack v. Wash. Metro. Area Transit Auth.*, 353 F. Supp. 3d 1, 8 n.4. (D.D.C. 2019) (citing *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51 (D.D.C. 2015). And defendants did not even mention their piercing the corporate veil argument in reply to Lattimer's opposition, but rather in reply to Plaintiffs' opposition. In any event, Defendants' one-page argument on the applicability of veil-piercing here, without more, is simply insufficient for the Court to apply the doctrine and require Lattimer to pay restitution. It may be that "Lattimer *is* Gregory L. Lattimer, PLLC." Defs.' Second Reply 9. But Defendants do not offer evidence to support this commonsense conclusion. More importantly, Defendants do not point to any evidence of fraud or wrong, and the only equitable reason they provide for holding Lattimer personally liable is contained in one sentence: "[T]he Court should not permit Mr. Lattimer to avoid disgorging an unearned fee—or the entire judgment—by hiding behind a shell corporate entity that may have few or no assets," *id.* This one-sentence rationale for veil-piercing, which speculates about Defendants' potential inability to obtain funds from Lattimer Law, is simply not enough for the Court to reach beyond the firm and hold Lattimer himself liable. The Court here is entirely in the dark as to the way Lattimer Law operates, its operating expenses, assets, or how much of the firm's income flows directly to Lattimer himself. The Court therefore does not find that equity requires for Lattimer to be held personally liable, and orders restitution of the attorney's fees by Lattimer Law only.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for order of restitution and payment of court-ordered costs (ECF No. 114) is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion for an order of payment of court-ordered costs is **DENIED**. The Court **DEFERS RULING ON** the motion with respect to restitution of the $408,000 distributed to Plaintiffs, and will refer Plaintiffs, Lattimer, and Defendants to mediation on the issue. The Court **DENIES** the motion with respect to any restitution by Gregory L. Lattimer himself. And the Court **GRANTS** the motion with respect to the $272,000 distributed to The Law Offices of Gregory L. Lattimer, PLLC, as part of its contingency agreement with Plaintiffs, and orders restitution by The Law Offices of Gregory L. Lattimer, PLLC of the full amount, plus post-judgment interest starting from May 19, 2016. Finally, the Court orders the firm to provide an accounting for the $5,008.23 it received in post-judgment interest on the $680,000 judgment within 30 days. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 25, 2019                                                                RUDOLPH CONTRERAS
                                                                                           United States District Judge