## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THEODORE WESBY, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:   09-501 (RC) |
| | : | |
| v. | : | Re Document Nos.:   114, 153 |
| | : | |
| DISTRICT OF COLUMBIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RESTITUTION; DENYING DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR RECONSIDERATION

## I.  INTRODUCTION

Faced with a money judgment of $680,000 for falsely arresting a group of partygoers ("Plaintiffs"), Defendants the District of Columbia and Metropolitan Police Department officers paid up.  When the Supreme Court reversed summary judgment in Defendants' favor, however, Defendants wanted their money back and asked this Court for restitution.  In an earlier ruling, the Court ordered the law firm of Plaintiffs' former counsel to repay the $272,000 contingency fee it retained.  But the Court declined to hold the lawyer personally liable and deferred deciding whether Plaintiffs should repay their portion of the money judgment pending mediation.  Mediation failed.  The Court now holds that, as much as it sympathizes with Plaintiffs' financial circumstances, Plaintiffs must pay restitution to Defendants because the legal process has coerced from Defendants money not legally owed.  In addition, the Court denies Defendants' motion to reconsider—which merely asks the Court to clarify that its order refusing to hold Plaintiffs' former counsel personally liable for repaying the contingency fee is "without prejudice"—because it is unclear what that would accomplish.

## II.  BACKGROUND

The Court offers only a brief description of the case's factual background, because it related the facts relevant to the restitution question in its previous opinion on the issue.  *See Wesby v. District of Columbia (Wesby IV)*, 393 F. Supp. 3d 34 (D.D.C. 2019).

Plaintiffs sued the District of Columbia and the District's Metropolitan Police Department after their arrests at a house party.  *Id.* at 36.  They sought relief for false arrest under 42 U.S.C. § 1983 as well as for false arrest and negligent supervision under D.C. law.  *Id.* at 37. The district court found that the arresting officers lacked probable cause to arrest Plaintiffs and awarded summary judgment to Plaintiffs on all claims.  *Wesby v. District of Columbia (Wesby I)*, 841 F. Supp. 2d 20, 48–49 (D.D.C. 2012).  A jury then awarded $680,000 to Plaintiffs in compensatory damages.  *Wesby IV*, 393 F. Supp. 3d at 37.  The D.C. Circuit affirmed.  *See Wesby v. District of Columbia (Wesby II)*, 765 F.3d 13, 31 (D.C. Cir. 2014).  It refused to hear the case en banc or stay its mandate pending the District's filing a petition for writ of certiorari. *Wesby IV*, 393 F. Supp. 3d at 37.

Defendants satisfied the judgment by paying the law firm of the lawyer who represented Plaintiffs, Gregory Lattimer.  *Id.*  The Law Offices of Gregory Lattimer, LLC ("Lattimer Law") retained forty percent of the judgment, or $272,000, in legal fees.  *Id.*  The firm distributed the remaining $408,000 to Plaintiffs depending on their recoveries at trial (some received $21,000 in after-fee distributions, others $30,000).  *Id.*

Eventually, the Supreme Court reversed the D.C. Circuit's ruling.  *District of Columbia v. Wesby (Wesby III)*, 138 S. Ct. 577, 593 (2018).  It found that the officers had probable cause to arrest Plaintiffs and were entitled to qualified immunity, so it granted summary judgment to Defendants.  *Id.* at 582, 593.

A flurry of filings followed on remand. Defendants asked this Court for restitution from Plaintiffs and Lattimer Law of the payment they made to satisfy the now-reversed judgment against them, along with postjudgment interest and costs ordered by the Supreme Court. *See* Defs.' Mot. for Entry of an Order of Restitution and Payment of Court-Ordered Costs ("Defs.' Mot. for Restitution"), ECF No. 114; *see also* Defs.' First Reply in Supp. of Defs.' Mot. for Restitution, ECF No. 117; Defs.' Reply in Supp. of Defs.' Mot. for Restitution ("Defs.' Second Reply"), ECF No. 145. Lattimer withdrew as Plaintiffs' counsel once he realized the motion created a conflict of interest, Min. Entry (Nov. 15, 2018), then he filed an opposition to Defendants' motion, *see* Lattimer's Opp'n to Defs.' Mot. for Restitution, ECF No. 130. After the Court appointed Plaintiffs new counsel, they opposed the motion too. *See* Pls.' Mem. in Opp'n to Defs.' Mot. for Restitution ("Pls.' Opp'n"), ECF No. 137; *see also* Pls.' Surreply in Resp. to Gregory Lattimer's Resp. Br., ECF No. 147. And because Plaintiffs wanted to put Lattimer on the hook for repaying the money he passed along to them, Lattimer filed an opposition to their filing as well. *See* Lattimer's Resp. to Pls.' Opp'n, ECF No. 143. Finally, Antoinette Colbert, representative for the estate of one of the deceased plaintiffs, filed her own opposition to Defendants' restitution motion. *See* Colbert's Opp'n to Defs.' Mot., ECF No. 139.

The Court ordered Lattimer Law to repay Defendants what it had received in contingency fees, but the Court deferred ruling on the share of the judgment distributed to Plaintiffs. *Wesby IV*, 393 F. Supp. 3d at 38–39. First, the Court rejected Lattimer's argument that the Supreme Court's decision left intact Plaintiffs' victory on the negligent supervision claim. *Id.* at 39–40. It pointed out that the Supreme Court stated unambiguously: "[T]he District and its officers are entitled to summary judgment on all of the partygoers' claims." *Id.* at 39 (quoting *Wesby III*, 138 S. Ct. at 589). Second, the Court rebuffed Lattimer's assertion that Defendants were not entitled

3

to restitution either because they failed to post a bond pending appeal or because they had entered into a settlement with Plaintiffs forgoing their right to restitution. *Id.* at 40–41. A party is not required to post a bond pending appeal to seek restitution of a reversed judgment later. *Id.* at 41. And there was no evidence that Plaintiffs and Defendants had entered into any kind of agreement precluding restitution. *Id.* Finally, the Court awarded restitution to Defendants of the contingency fee that Lattimer Law kept, but it declined to make Lattimer personally liable for that restitution. *Id.* at 41–44. Although settled caselaw favors repayment of contingency fees after reversal of a judgment, *id.* at 42–43, Defendants did not adequately develop their argument that the Court should pierce the veil of Lattimer Law to make Lattimer himself liable, *id.* at 43–44. The Court deferred deciding whether Defendants were entitled to restitution from Plaintiffs and ordered Plaintiffs, Lattimer, and Defendants to mediation on the issue. *Id.* at 45.[1]

Shortly after the Court issued its decision, the District asked the Court to reconsider its ruling that Lattimer was not personally liable for repaying his portion of the judgment. Mot. to Reconsider, ECF No. 153. Lattimer filed an opposition. Lattimer's Opp'n to D.C.'s Mot. to Reconsider, ECF No. 154. The District filed a reply. D.C.'s Reply, ECF No. 155.

A few months later, mediation failed. Joint Status Report, ECF No. 159. The Court advised the parties that it would resolve the question of the Plaintiffs' liability, *see* Min. Order (Dec. 13, 2019), and the parties filed supplemental briefing, *see* Pls.' Suppl. Opp'n to Defs.' Mot. for Restitution ("Pls.' Suppl. Opp'n"), ECF No. 162; Def. D.C.'s Reply to Pls.' Suppl. Opp'n, ECF No. 163; Pls.' Reply to Def. D.C.'s Resp. to Pls.' Suppl. Opp'n, ECF No. 164.

---

[1] The Court also denied Defendants' motion for payment of costs awarded by the Supreme Court because the Supreme Court's order was already enforceable. *Wesby IV*, 393 F. Supp. 3d at 38.

The Court is now ready to rule on the question of Plaintiffs' restitution liability and Defendants' motion to reconsider.

## III. ANALYSIS

### A. Plaintiffs' Restitution Liability

Defendants seek restitution from all Plaintiffs except one who passed away. *See* Defs.' Second Reply at 6 n.4. Accordingly, the sum at issue is $377,632.95. *See* Colbert's Opp'n to Defs.' Mot., Ex. C, ECF No. 139-3 (showing that the deceased plaintiff received $30,367.05). Because the reversed judgment erroneously required Defendants to pay Plaintiffs that money under threat of law, Defendants are entitled to restitution despite Plaintiffs' financial struggles. Plaintiffs do not prove up any affirmative defense that would protect them from liability.

When a litigant makes a payment to satisfy a judgment that is later reversed, the general rule is that "what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a reversal, by the litigants opposed to him, the beneficiaries of the error." *Atl. Coast Line R. Co. v. Florida*, 295 U.S. 301, 309 (1935); *accord United States v. Morgan*, 307 U.S. 183, 197 (1939). The Restatement summarizes the law this way: "A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment ("Restatement") § 18 (Am. Law Inst. 2011).

That statement of the law contains an important caveat: restitution is permitted only "as necessary to avoid unjust enrichment." *Id.*; *see also id.* cmt. e; *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 143 (2d Cir. 2019). The unjust enrichment proviso reflects the nature of restitution as an equitable remedy. Restitution "is not a matter of right, but is 'ex

5

gratia.'" *Williams v. Wash. Metro. Area Transit Comm'n*, 415 F.2d 922, 944 (D.C. Cir. 1968) (quoting *Atl. Coast Line*, 295 U.S. at 310)).  One claiming restitution must "show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it."  *Atl. Coast Line*, 295 U.S. at 309.  So although a court should ordinarily order restitution when a litigant satisfies a judgment that is later reversed, it may reduce the amount owed or deny restitution altogether "if compelling equitable considerations so dictate."  *Williams*, 415 F.2d. at 944.

Recognizing that there is no doubt Defendants made a payment to Plaintiffs pursuant to a judgment that was later reversed, Plaintiffs' argument against restitution is an appeal to equity.  They assert that requiring them to repay Defendants would be unfair for two reasons.  First, they are impoverished and could not afford to pay restitution if ordered.  *See* Pls.' Opp'n at 10–12; Pls.' Suppl. Opp'n at 3.  Second, they blame Lattimer for not warning them that the judgment may be reversed and that they may be liable for restitution; as a result, they spent the money long ago.  *See* Pls.' Opp'n at 8–10, 13–19; Pls.' Suppl. Opp'n at 10–11.

Unfortunately for Plaintiffs, the parties' personal circumstances play a diminished role in the unjust enrichment analysis when the original payment was "compelled by law to pay a claim that is not legally enforceable."  Restatement, *supra*, § 18 cmt. e*.*  The Restatement distinguishes between those kinds of payments and ones made by mistake or ones made pursuant to judgments that, despite some defects, rest on valid legal liability.  *Id.*; *see also Vera*, 946 F.3d at 143 ("[T]he Restatement ties an entitlement to restitution to the *legal* validity of the underlying debt or liability . . . .").  The latter two scenarios may not give rise to unjust enrichment.  Restatement*, supra*, § 18 cmt. e.  But "[w]here money is paid to satisfy a claim that is . . . legally unenforceable, the restitution claim based on legal compulsion stands on a different footing."  *Id.*

6

The difference is that, when it comes to payments made to satisfy legally baseless judgments, there is a special "need to remedy [the] misapplication of legal process [] so that the law not stultify itself by requiring what it has declared may not be required." *Id.* This "public concern with the integrity and proper application of legal coercion" is "an important reason for restitution that is independent of the individualized equities of the parties." *Id.*; *see also Vera*, 946 F.3d at 144 ("In determining whether Appellees were 'unjustly enriched' for equitable purposes by receiving the funds they have collected . . . we must weigh the legal validity of their underlying claims, not the relative moral standing of the parties.").[2]  So regardless of the parties' personal circumstances, a payment in satisfaction of a legally groundless judgment unjustly enriches the recipient and thus warrants restitution. *See* Restatement, *supra*, § 18 cmt. e; *see also Vera*, 946 F.3d at 144 (concluding that, where plaintiffs "ha[d] collected substantial funds pursuant to void turnover orders in a case where the District Court had no basis in law for exercising jurisdiction," the court was "*compelled* . . . to rule that restitution [was] warranted" (emphasis added)). Because Defendants' payment to Plaintiffs had no legal basis, Plaintiffs were unjustly enriched.

Nevertheless, the recipient of a payment in satisfaction of a later-overturned judgment may still raise affirmative defenses. Restatement, *supra*, § 18 cmt. e. Plaintiffs initially invoked the change-of-position defense. Pls.' Opp'n at 8–10. "If receipt of a benefit has led a recipient without notice to change position in such manner that an obligation to make restitution of the original benefit would be inequitable to the recipient, the recipient's liability in restitution is to that extent reduced." Restatement, *supra*, § 65. Importantly, "the fact that the recipient has spent

---

[2] Several of the cases Plaintiffs rely on arise out of mistaken payments. *See Metro. Life Ins. Co. v. Beard*, No. 16-cv-11782, 2019 WL 480513, at *8 (D. Mass. Feb. 7, 2019); *XTO Energy, Inc. v. Furth*, No. 15-cv-1180, 2017 WL 5891740, at *4–8 (D.N.M. Nov. 27, 2017); *Marsden v. District of Columbia*, 142 A.3d 525, 527–28 (D.C. 2016). Those cases lack the independent need to correct legal error present here because the initial judgment was unfounded.

the money is not of itself a defense to liability in restitution, because an expenditure of funds—without more—does not constitute a change of position." *Id.* cmt. c.  Instead, "the recipient must demonstrate a causal relationship between receipt and expenditure" in that he would not have made the expenditure "but for" the payment he received.  *Id.*  Spending money on "ordinary living expenses, debt repayment, and the acquisition of capital assets generally do not" reflect a change of position but "[e]xpenditures devoted to extraordinary consumption" do.  *Id.*

Yet despite raising the change-of-position defense in their first opposition to Defendants' motion for restitution, Pls. Opp'n at 8–10, Plaintiffs concede in their subsequent filings that they "did not change their financial positions in reliance upon receiving the judgment proceeds," Pls.' Suppl. Opp'n at 3 (quoting Defs.' Second Reply at 6).  That appears to be correct.  Most of the expenditures that Plaintiffs cite in their filings—such as payments toward preexisting debt, necessary medical expenses, or food and rent—are exactly the kinds that Plaintiffs would have made even if they had not received the Defendants' money.  *See generally* Pls.' Opp'n at 9–10; Pls.' Suppl. Opp'n at 3–9.  Some of the Plaintiffs' expenditures are closer to the "extraordinary" ones that could sustain a change-of-position defense.[3]  But because Plaintiffs do not attempt to establish a causal relationship between those expenditures and the receipt of Defendants' money, the defense does not apply.

Having determined that Plaintiffs were unjustly enriched and that Plaintiffs have not established a change-of-position defense, the Court holds that Plaintiffs are liable to Defendants in restitution.  Defendants' claim is "relatively straightforward" because the dispute is "between the original parties to the underlying proceedings."  Restatement § 18 cmt. a; *see also Cox v.*

---

[3] For instance, two of the plaintiffs bought cars and two others paid for funerals.  *See* Pls.' Suppl. Opp'n at 4–8; *see also* Restatement § 65 cmt. c, illus. 9 (explaining that widow's spending more money on husband's funeral than she would have without mistaken overpayment would entitle her to change-of-position defense).

8

*Cox*, 780 N.E.2d 951, 960 (Mass. App. Ct. 2002) ("Both the Restatement § 74, and the Restatement (Third) § 18, view third parties in quite a different light than they do parties to the judgment that was reversed.").[4]  And although Plaintiffs (perhaps rightfully) point the finger at Lattimer, "[u]nder our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.'"  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)).[5]  When Plaintiffs, through Lattimer, demanded payment pending appeal, they assumed the risk that they might have to repay the Defendants if the appeal went against them.  *See Strong v. Laubach*, 443 F.3d 1297, 1300 (10th Cir. 2006).  Under threat of legal sanction, Defendants paid money they did not owe.  As unfortunate as Plaintiffs' financial situations are, the improper use of the law's coercive power demands correction.  Defendants deserve restitution.

### B.  The District's Motion to Reconsider

The Court deals with the District's motion to reconsider briefly.  The motion does not ask the Court to revisit its decision to deny Lattimer's personal liability—yet.  *See* Mot. to

---

[4] This case is thus unlike several cases Plaintiffs cite in which the recipient of a benefit was an innocent third party.  *See Mazor v. Farrell*, 186 A.3d 829, 834 (D.C. 2018); *Harrentsian v. Hill*, 385 P.3d 887, 892–95 (Idaho 2016); *Cox*, 780 N.E.2d at 960.

[5] Of course, Plaintiffs may well assert a claim against Lattimer Law.  *See Seed Co. Ltd. v. Westerman*, 832 F.3d 325, 335 (D.C. Cir. 2016) (outlining elements of malpractice under D.C. law (quoting *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009))); *see also* D.C. Code § 12-301(8) (providing three-year limitations period for such claims).  But the Court will decline Defendants' and Plaintiffs' invitations to order Lattimer Law to pay restitution beyond the amount it received in contingency fees.  *See, e.g.*, Defs.' Mot. for Restitution at 6; Pls.' Opp'n at 13; *see also Wesby IV*, 393 F. Supp. 3d at 41–43 (ordering Lattimer Law to repay contingency fees).  Plaintiffs—not Lattimer Law—are the ones whom their portion of the judgment unjustly enriched.  *Cf.* Restatement § 1 ("A person who is unjustly enriched at the expense of another is subject to liability in restitution.").  Put differently, Lattimer Law did not retain Plaintiffs' portion of the judgment, and retention of the transferred benefit is a necessary ingredient of unjust enrichment.  *See Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009).

Reconsider at 6.  It merely requests the Court "add[] that its holding" regarding Lattimer's personal liability "is without prejudice, subject to information gained in discovery in aid of the District's attempts to execute on the judgment/restitution order."  *Id.*  In other words, the District wants to be able to renew its request to pierce Lattimer Law's corporate veil if the law firm does not pay what it is supposed to.  *Id.*

The Court denies the District's motion.  Although the order accompanying this opinion is final, the District can always seek reconsideration under Federal Rule of Civil Procedure 60(b).  In addition, the District can enforce the order using the tools and procedures permitted under Federal Rule of Civil Procedure 69.  If Lattimer Law does not pay what it owes the District and Rule 69(a)(2) discovery uncovers evidence that the law firm is in fact Lattimer's alter ego, the Court will have to take a new look at the parties' respective claims.  For now, however, the Court is unsure what the District's proposed "without prejudice" addendum would accomplish.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for an order of restitution (ECF No. 114) is **GRANTED IN PART AND DENIED IN PART**.  The Court orders Plaintiffs, with the exception of Colbert, to pay Defendants $377,632.95 plus postjudgment interest dating from May 19, 2016.  With respect to restitution owed by Lattimer and Lattimer Law, the Court's earlier order stands.  *See* Order, ECF No. 148.  Defendant District of Columbia's motion to reconsider (ECF No. 153) is **DENIED**.

Dated: November 12, 2020                                                         RUDOLPH CONTRERAS
                                                                                               United States District Judge